
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| Perma-Fix Northwest Richland, Inc.<br>2025 Battelle Blvd.<br>Richland, Washington 99352<br><br>Plaintiff,<br><br>v.<br><br>Philotechnics, Ltd.<br>201 Renovare Blvd.<br>Oak Ridge, Tennessee 37830<br><br>Serve:<br>CT Corporation System<br>800 South Gay Street, Suite 2021<br>Knoxville, Tennessee 37929<br><br>Defendant. | Civil Action No. 3:09-CV-472<br><br>Phillips/Shirley |

## COMPLAINT

Plaintiff, Perma-Fix Northwest Richland, Inc. (PFNW), by counsel, hereby files this Complaint against Defendant, Philotechnics, Ltd. (Philotechnics), and states in support as follows:

### Parties

1. Plaintiff PFNW, is a corporation organized and existing under the laws of the State of Washington, with its principal place of business at 2025 Battelle Blvd., Richland, WA 99354. Among other things, PFNW treats and processes low-level radioactive waste (LLRW) and LLRW mixed with hazardous waste (mixed waste).

2. Defendant Philotechnics is a Tennessee corporation with its principal place of business at 201 Renovare Blvd., Oak Ridge, TN 37830. Philotechnics offers brokerage services between generators and processors of LLRW and mixed waste.

## Jurisdiction

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

4. Venue properly lies in this Court under 28 U.S.C. § 1391(a) because Philotechnics maintains its principal place of business and is subject to this Court's personal jurisdiction in the Northern Division of the U.S. District Court, Eastern District of Tennessee.

## Nature and Summary of Action

5. PFNW brings this action against Philotechnics to petition the Court to direct specific performance of the Return-of-Waste clause contained in the brokerage contract between PFNW and Philotechnics over a discrete quantity of nonconforming waste that was delivered to PFNW by Philotechnics. The reason that PFNW seeks specific performance of the brokerage contract is that there exists no adequate remedy at law available to it, as: (a) the continued presence of the nonconforming waste at PFNW's facility likely will trigger one or more environmental enforcement actions which very well could shut down PFNW's operations altogether; and (b) the nuclear activity levels exhibited by the nonconforming waste stored at the PFNW facility exceed both the facility's license quantity and the limits of the volume and nature of the work that PFNW can undertake to perform. Alternatively, PFNW seeks to recover the additional cost necessary to treat this nonconforming waste in order to bring its facility back into environmental compliance and to allow for the lawful disposal of this waste at an offsite disposal site.

## Facts

### *The Contract*

6. On August 8, 2002, Philotechnics entered into a contract with ATG, Inc. entitled "Agreement for Radiological Material Processing and Disposal Services" (Contract). Under the terms of the Contract, Philotechnics bore responsibility for collecting and brokering waste from generators and delivering that waste to ATG, Inc. for processing. ATG, Inc., in turn, bore responsibility for processing and disposal of the treated waste delivered to it by Philotechnics. ATG's processing facility was located in Richland, WA, adjacent to the Hanford Nuclear Reservation. The Contract is attached hereto at Tab A and is incorporated herein.

7. The Contract term was for a period of three years, with automatic renewals for successive one-year periods, absent cancellation by either party. *See* Tab A, Contract, ¶ 1(c).

8. Shortly after the initial execution of the Contract, ATG's Richland processing facility was sold to Pacific EcoSolutions, LLC, and Pacific EcoSolutions, LLC assumed ATG's rights and responsibilities under the Contract as ATG's successor in interest. Thereupon, Pacific EcoSolutions, LLC sold the Richland processing facility to PFNW, and PFNW assumed Pacific EcoSolutions' rights and responsibilities under the Contract as Pacific EcoSolutions' successor in interest.

9. Since the expiration of the base period of the Contract, the Contract has been automatically renewed on a yearly basis and presently is in full force and effect between Philotechnics and PFNW, the second successor in interest.

10. The Contract provides that Waste shipped to the processor shall be shipped "in accordance with the [the waste processor's] Waste Acceptance Criteria ('WAC')". *See* Tab A, Contract, ¶ 3(b).

11. The Contract further provides that "Philotechnics hereby represents and warrants that the data provided by it for each such Manifest will be true and correct in all aspects and in compliance with all valid and applicable Federal, State or local laws, rules, regulations, ordinances and government actions." *See* Tab A, Contract ¶ 3(c).

12. The Contract goes on to provide that following delivery of the Waste by Philotechnics:

> Should [the waste processor] determine any Waste to be non-conforming, it shall promptly provide notice to Philotechnics. Philotechnics hereby represents, warrants and promises that it has the legal right and ability to accept, and will accept, the return of Waste (processed or unprocessed) to the generator or facility of origin, either in the event of a non-conformance or in the event that the return is directed by the appropriate regulatory authority. In the event that Philotechnics delivers non-conforming Waste to [the waste processor], all reasonable and applicable costs associated with such a return of Waste shall be the responsibility of the [sic] Philotechnics.

*See* Tab A, Contract, ¶ 3(d).

13. With respect to the resolution of disputes, the Contract provides that "[t]he parties agree that the exclusive venue for any legal action, suit or proceeding (collectively, 'suit') regarding any claim, controversy or dispute arising out of or relating to the Contract or [sic] instituted in the United States District Court, Eastern District of Tennessee, or a Tennessee State court of competent jurisdiction." *See* Tab A, Contract, ¶ 14(b).

14. The Contract specifies that the Contract shall be governed by and construed in accordance with the laws of the State of Tennessee. *See* Tab A, Contract, ¶ 14(c).

*The Nonconforming DuPont Waste*

15. On April 18, 2005, Philotechnics and the then-party to the Contract, Pacific EcoSolutions, entered into Task Order no. 4 to the Contract for the processing of twelve drums

of Waste from DuPont that was contaminated with what was believed to be at the time low levels of Americium Isotope 241 (Am-241).

16. Thereupon, PFNW discovered that instead of containing the low levels of Am-241 identified in the shipping papers, the DuPont waste contained isotopes that exceeded PFNW's WAC limits. In particular, PFNW discovered that the DuPont waste included Am-241 at levels higher than reported as well as Strontium 90 (Sr-90), an isotope that was nowhere disclosed on the waste characterization information included in the shipping manifest provided by Philotechnics to PFNW.

17. Following discovery of these nonconformities, PFNW repeatedly demanded that Philotechnics remove the waste under the Return-of-Waste clause.

18. Alternatively, PFNW several times offered to attempt to treat the nonconforming DuPont waste provided that Philotechnics pay PFNW the additional cost of treatment necessary to make the waste conform to PFNW's WAC limits.

19. Finally, by letter dated May 21, 2009, PFNW formally demanded that Philotechnics remove the nonconforming DuPont waste under the Return-of-Waste clause. Also in that letter, PFNW alternatively offered to treat the nonconforming DuPont waste for a price of $1,935,013.50.

20. At all relevant times, Philotechics refused to accept the return of the nonconforming waste and refused to agree to pay PFNW the additional cost of treating the nonconforming waste.

21. As a licensee of a State of Washington nuclear materials license, PFNW is powerless to remove the nonconforming DuPont waste in any way other than through the invocation of the Return-of-Waste clause contained in its contract with Philotechnics.

22. Upon information and belief, the continued presence of the nonconforming waste at PFNW's facility likely will trigger one or more environmental enforcement actions which very well could shut down PFNW's operations altogether.

23. In addition, the nuclear activity levels exhibited by the nonconforming waste stored at PFNW's facility limits the volume and nature of the work that PFNW can undertake to perform. This condition impairs PFNW's business operations as a whole.

24. By delivering to the waste processor nonconforming waste and by refusing to accept the return of the nonconforming DuPont waste under the Return-of-Waste clause, Philotechnics has caused PFNW to incur and to continue to incur the following categories of cost:

(a) Equipment and facility decontamination efforts associated with the higher activity levels of the nonconforming DuPont waste;

(b) Facility operations management adjustments to allow for the custody and management of the nonconforming DuPont waste;

(c) Permit and license amendments and variances to allow for the custody and management of the nonconforming DuPont waste;

(d) Health physics impacts and related operational and resource constraints;

(e) Lost opportunity costs arising from state-ordered shutdown of facility due to exceedances of the facility air permit annual process limits due to the elevated isotopic levels in the nonconforming DuPont waste;

(f) Additional monthly reporting obligations regarding the management and status of resolution of the nonconforming DuPont waste disposition;

(g) Loss of facility production and storage capacity due to status of nonconforming DuPont waste as "aged waste".

## Count I – Specific Performance

25. PFNW restates and incorporates herein by reference paragraphs 1 through 24 of this Complaint.

26. The Contract is a fair and balanced instrument, especially with respect to enforcement of contract provisions against Philotechnics, as Philotechnics was the drafter of the document.

27. One of the most important rights and remedies conferred by the Contract onto PFNW is the Return-of-Waste clause, given the highly regulated nature of the work at issue and the potential liability for fines levied by state and federal regulators.

28. If PFNW is not able to successfully invoke the Return-of-Waste clause, PFNW will suffer damages that are not suitable for recovery in a breach of contract action, such as: (a) damages arising from a state or federal enforcement action, which could have the effect of shutting down PFNW's Richland facility altogether; (b) damages arising from limitations imposed on facility operations due to the onsite presence of the nonconforming DuPont waste.

29. Under Tennessee law, specific performance is an equitable remedy and is the substitute for the legal remedy of compensation when the legal remedy is inadequate or impracticable.

30. Here, because PFNW is constrained by the regulators from removing the waste from its facility, and because the onsite presence of the nonconforming DuPont waste both restricts PFNW's facility operations and potentially subjects PFNW to fines and shutdown orders, any legal remedy otherwise available to PFNW is inadequate or impracticable.

31. As such, PFNW is entitled to petition the Court for the specific performance of the Return-of-Waste clause.

## Count II – Breach of Contract

32. PFNW restates and incorporates herein by reference paragraphs 1 through 31 of this Complaint.

33. The Contract is a valid and enforceable agreement between PFNW and Philotechnics.

34. Under Tennessee law, a contract may be breached when the party charged with the breach performs its contract obligations in a manner inconsistent with the contract requirements.

35. Under the Contract, any waste shipped by Philotechics to PFNW had to be in compliance with the WAC attached to the Contract.

36. Contrary to the waste characterization data provided by Philotechnics in the shipping manifest, the DuPont waste was out of compliance with the WAC in a number of respects.

37. Philotechnics breached the Contract by delivering to PFNW the DuPont waste that was out of compliance with the WAC.

38. One measure of damages due to this breach is the amount it would cost PFNW to treat the nonconforming DuPont waste so as to allow PFNW to lawfully dispose of that waste offsite.

## Prayer for Relief

Plaintiff PFNW prays that the Court:

A. Under Count I, order Philotechnics to specifically perform its obligations under the Return-of-Waste clause of the Contract by physically taking custody of and by removing the nonconforming DuPont waste, and order that Philotechnics pay PFNW the additional costs of maintaining and managing the waste as itemized in ¶ 24, above, presently estimated to be $1 million.

B. Under Count II, and in the alternative to complete relief sought under Count 1, order Philotechnics to pay PFNW the cost to treat the nonconforming DuPont waste so as to allow PFNW to lawfully dispose of that waste offsite, presently estimated to be $2 million.

C. Grant such other legal or equitable relief as it deems proper.

                                      Respectfully submitted,

Dated: October 29, 2009

                                      Francis L. Lloyd, Jr.
Law Office of Francis L. Lloyd, Jr.
9111 Cross Park Drive
Suite D-200
Knoxville, TN 37923
(865) 470-4200
(865) 978-6504 fax
FLLloydJr@gmail.com

Counsel for Plaintiff Perma-Fix Northwest Richland, Inc.

Of Counsel:

John C. Person, Esq.
Person & Craver LLP
1801 K Street, NW
Washington, DC 20006
(202) 466-4434
(202) 466-4416 fax
JPATTNY@aol.com