UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

PERMA-FIX NORTHWEST RICHLAND,

    Plaintiff/Counter-Defendant,

v.

PHILOTECHNICS, LTD.,                     Case No.: 3:09-CV-472

    Defendant/Counter-Plaintiff/Third-Party Plaintiff,

v.

E.I. DU PONT DE NEMOURS AND COMPANY,

    Third-Party Defendant.

## THIRD-PARTY COMPLAINT

Comes now the Defendant/Counter-Plaintiff/Third-Party Plaintiff, Philotechnics, Ltd. ("Philotechnics"), by and through counsel, and for its cause of action against the Third-Party Defendant, E.I. du Pont de Nemours and Company ("DuPont"), does hereby state as follows:

### Parties, Jurisdiction, and Venue

1.    Philotechnics is a corporation organized under the laws of the state of Delaware and authorized to conduct business in the State of Tennessee. Its principle place of business is located at 201 Renovare Boulevard, Oak Ridge, Tennessee.

2.    Upon information and belief, DuPont is a corporation organized under the laws of the State of Delaware with its principle place of business located in Wilmington, Delaware. DuPont may be served with process via its registered agent in the State of Tennessee, CT Corporation System, located at 800 South Gay Street, Suite 2021, Knoxville, Tennessee.

1

3.      This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, as the parties are of different states, and as the amount in controversy exceeds $75,000.

4.      Venue is proper in this district under 28 U.S.C. § 1391, as well as pursuant to Fed. R. Civ. Proc. 13.

## Factual Allegations

### *The History*

5.      On August 8, 2002, Philotechnics entered into a contract with ATG, Inc. ("ATG"), titled "Agreement for Radiological Material Processing and Disposal Services" ("The Contract", Attached as Exhibit A to Counterclaim), whereby ATG was to perform waste processing and waste disposal services in compliance with all applicable rules, regulations, ordinances and generally accepted practices and procedures designed at all times to protect the environment and the public health and safety.

6.      The Contract provided the following definitions for the aforementioned terms:

> (e)    "Waste Processing Services" shall include Waste treatment by: volume reduction, decontamination, stabilization or other treatment methodologies.  Waste Processing Services does not include disposal of Waste at the licensed burial facility.
>
> (f) "Waste Disposal Services" shall mean transportation to and arranging for final disposal of a Shipment of Waste at a licensed burial facility.  The term shall also include submitting a certificate of disposal or destruction to Philotechnics upon completion of final disposal.

7.      The Contract further provided that all waste processing services were to be performed within 90 days and all waste disposal services were to be performed within 180 days.

8.      Thereafter, Pacific EcoSolutions, LLC. ("PEcoS") acquired the ATG processing facility in Richland, Washington, and assumed ATG's rights and responsibilities under The Contract as a successor in interest.

2

9.     Later, PEcoS sold the Richland processing facility to PFNW, which assumed PEcoS's responsibilities (previously ATG's responsibilities) under The Contract as a successor in interest.

10.     At all times during The Contract, the PFNW Richland processing facility ("the Facility") is and has been located within the Northwest Interstate Compact on Low-Level Radioactive Waste Management consisting of the states of Alaska, Hawaii, Idaho, Montana, Oregon, Utah, Washington and Wyoming.

11.     The Contract term was for a period of three years with automatic renewals absent cancellation by either party.    Since the expiration of the base period of The Contract, The Contract has been automatically renewed on a yearly basis.

12.     The Contract expressly contemplates the potential for non-conforming waste, requiring PFNW to promptly determine and notify Philotechnics of same.

## The DuPont Waste

13.     On or about April 18, 2005, DuPont entered into a confidential contract with Philotechnics to serve as a broker to administer the disposal of certain radioactive waste that originated from DuPont facility located in Billerica, Massachusetts (the "DuPont Waste"). DuPont is in possession of the original or a copy of the fully executed confidential contract.

14.     In accordance with the terms and conditions of the DuPont Contract and the representations from DuPont regarding the character of the DuPont Waste, Philotechnics then brokered an arrangement to dispose of certain of the DuPont Waste with PFNW (via PFNW's predecessors).

15.     Philotechnics obtained DuPont's approval of PFNW (via PFNW's predecessors) before entering into any agreements with PFNW.

3

16.     Philotechnics and PEcoS, entered into "Task Order No. 3" to The Contract (attached as Exhibit B to the Counterclaim) for the processing of five drums of the DuPont Waste generated and owned by DuPont.

17.     Later, Philotechnics and PEcoS, entered into "Task Order No. 4" to The Contract (attached as Exhibit B to the Counterclaim) for the processing of an additional twelve drums of the DuPont Waste generated and owned by DuPont.

18.     Task Order No. 4 required that all DuPont Waste be characterized, processed for shipment, and transferred to the facility of ultimate disposal disposition within 450 days of delivery.  Thus, additional time was contemplated for the performing of the Waste Processing Services and Waste Disposal Services with respect to this waste.

19.     Under Task Order No. 4, depending upon the waste characterization, the ultimate destination for the waste would be at a licensed disposal facility suitable for the particular type of waste, for instance the EnergySolutions' disposal facility in Utah ("the Utah Disposal Facility") for any radioactive waste designated as "Class A" waste under federal regulations.

20.     Additionally, items determined to be "Sealed Sources" were to be packaged separately for disposal at Off-Site Source Recovery Project, in Los Alamos, NM, or other location such as the radioactive waste disposal facility at Barnwell South Carolina (the "Barnwell Disposal Facility") if not acceptable to the Off-Site Source Recovery Project.

21.     On or about July 6, 2006, the twelve drums of DuPont Waste under Task Order No. 4 were delivered to the Facility.  Thus, in accordance with its contractual obligation to complete the work within 450 days, PFNW (via its predecessors) had until September 29, 2007, to do so.

4

22.     On or about November 1, 2006, a workplace incident occurred at the Facility while processing the DuPont Waste where one or more workers became over-exposed to Americium-241 requiring medical treatment and monitoring. This incident triggered reporting obligations to the Washington State Department of Health and to the United States Nuclear Regulatory Commission.

23.     After the November 1, 2006, workplace incident, PFNW ceased all work on the twelve drums of DuPont Waste.

24.     Due to the workplace incident and other delays, PFNW was unable to characterize, process for shipment, and transfer the DuPont Waste to the facility of ultimate disposal disposition within 450 days of delivery, as required pursuant to Task Order No. 4.

25.     Also, additional quantities of waste were generated related to the DuPont Waste as a result of the clean up and remediation effort by PFNW at the Facility caused by the November 1, 2006, workplace incident.

26.     PFNW informed Philotechnics that the 12 drums of DuPont Waste had (somehow) grown to 38 drums of waste.

27.     PFNW alleged that all but one of these 38 drums derived from the DuPont Waste were characterized as either "Class B" or "Class C" or "Greater Than Class C" ("GTCC") waste.

28.     Following PFNW's determination that the DuPont Waste consisted of "Class B", "Class C" and GTCC waste and was not suitable for ultimate disposition at any commercially available disposal facility, PFNW, Philotechnics and DuPont conferred to find a possible alternative location for disposal of the DuPont Waste.

29.     Notwithstanding the efforts by both Philotechnics and DuPont to reach a mutually agreeable resolution, PFNW filed the present lawsuit against Philotechnics seeking

compensatory damages and specific performance under The Contract (A copy of the Complaint is attached hereto as Exhibit A).

## COUNT I: Indemnification

30.    PFNW has asserted affirmative claims against Philotechnics for damages in this lawsuit based upon allegations that the character of the DuPont Waste received by PFNW for disposal was misrepresented by Philotechnics, as the broker for DuPont.

31.    PFNW has alleged that the DuPont Waste consisted of "Class B", "Class C" and GTCC waste as opposed to Class A waste, as previously represented by Philotechnics based upon information obtained from DuPont.

32.    Accordingly, PFNW has alleged that the DuPont Waste was not suitable for ultimate disposition at any commercially available disposal facility.

33.    Prior to execution of the DuPont Contract, DuPont made representations to Philotechnics regarding the characterization of all of the DuPont waste, which Philotechnics reasonably relied on when brokering the agreements with PFNW to process the DuPont waste.

34.    To the extent that PFNW is able to prove that Philotechnics made any representations to PFNW regarding the character of the DuPont Waste, these representations arise out of representations made by DuPont to Philotechnics.

35.    Philotechnics reasonably relied upon the representations from DuPont, as well as the terms and conditions of the confidential DuPont Contract, regarding the general character of the DuPont Waste.

36.    To the extent that PFNW is able to prove that it is entitled to any relief from Philotechnics, this relief would be obtainable based solely on the representations, actions, and omissions of DuPont.

6

37.     Paragraph 30 of the General Service Conditions of the confidential DuPont Contract includes a very standard indemnification clause that provides, in relevant part, as that each party—including DuPont--shall

> [T]o the extent permitted by law, indemnify, defend and hold harmless the other Party from and against any and all claims, demands, complaints or actions of third parties (including employees of the Parties or government agencies) arising from or relating to the Agreement (including personal injury, death, property damage or damage to the environment), to the extent caused or arising out of the negligence, willful misconduct, breach of this Agreement or a related agreement, or violation of law of or by the Indemnitor or any subcontractor of the Indemnitor...The claims demands, complaints and actions covered hereunder include all settlements, losses, liabilities, judgments, court costs, reasonable attorneys' fees, fines, penalties and other litigation costs and expenses arising from or related to such claims, demands, complaints or actions.

38.     Philotechnics made DuPont aware of the lawsuit filed by PFNW immediately after receipt of same, thereby triggering DuPont's obligation to defend, indemnify, and hold Philotechnics harmless

39.     DuPont never agreed to comply with contractual obligations.

40.     After PFNW filed its motion for summary judgment in this matter, Philotechnics formally requested that DuPont defend, indemnify and hold Philotechnics harmless for any damages incurred by Philotechnics as a result of the claims asserted against it by PFNW in this cause.

41.     DuPont has still never agreed to comply with its contractual obligations.

42.     While Philotechnics denies that it has any liability to PFNW, if in fact it is liable to PFNW for any damages, then DuPont is also liable for all such damages under theories of express and implied indemnity.

43.     Accordingly, Philotechnics is entitled to recover from DuPont any damages that Philotechnics incurs as a result of PFNW's claims asserted against it in this cause, including attorneys' fees and expenses.

7

## COUNT II:  Breach of Contract

44.     Prior to execution of the DuPont Contract, DuPont made representations to Philotechnics regarding the general characterizations of the DuPont Waste.

45.     Philotechnics relied on the general characterizations of the DuPont waste when entering into its agreements with PFNW (via its predecessors) regarding PFNW's obligations to specifically characterize, process, and treat the waste.

46.     PFNW is now asserting that Philotechnics' general characterization of the DuPont waste was inaccurate.

47.     Independent testing of the DuPont waste—done without the benefit of opening the drums—has already characterized many of PFNW's assertions to be inaccurate.

48.     Until the remaining drums are opened and classified properly, it is far from clear that DuPont or Philotechnics have made any material misrepresentations.

49.     However, if PFNW is able to prove that Philotechnics made material misrepresentations, this will be because of DuPont's material misrepresentations to Philotechnics.     See e.g. confidential DuPont Contract (specifically Paragraph 8 of the Environmental Services Addendum to the General Service Conditions).

50.     Philotechnics reasonably relied upon the representations from DuPont and the terms and conditions of the DuPont Contract regarding the general character of the DuPont Waste.

51.     Any misrepresentation by DuPont to Philotechnics regarding the character of the DuPont Waste constitutes a material breach of the DuPont Contract.

52.     Philotechnics has already incurred significant monetary damages as a result of any material breach by DuPont of the DuPont Contract, which damages include all attorneys'

8

fees and expenses incurred in this cause, as well as any future attorney fees, costs, expenses, and damages.

## COUNT III: Declaratory and Equitable Relief

53. As set forth in paragraphs 1 through 52 above, this litigation involves possession and control of the DuPont waste.

54. The DuPont waste is owned by DuPont, not Philotechnics.

55. The DuPont waste is presently at the Facility, in PFNW's possession.

56. PFNW seeks specific performance with respect to the "return" of the DuPont waste.

57. If the DuPont waste is to be "returned," it must be returned to DuPont, the true owner of the DuPont waste.

58. In fact, under the confidential contract with DuPont, specifically paragraph 4 of the Environmental Services Addendum to the General Service Conditions, Philotechnics is obligated to return waste to DuPont.

58. If the DuPont waste may not be "returned," it must remain in the possession of PFNW until a final disposition.

59. The possession of the DuPont waste is an issue that is appropriate for resolution under the interpleader rules of Fed. R. Civ. Proc. 20 and 22 and the Court's equitable powers—to avoid the parties, especially Philotechnics, being subjected to inconsistent rulings via separate lawsuits.

60. Philotechnics specifically seeks a declaration by this Court as to whether, and where, the DuPont waste may be "returned."

**WHEREFORE**, premises considered, Philotechnics prays as follows:

1.     That DuPont be served with process and be required to answer this Third-Party Complaint within the time required by law;

2.     That Philotechnics be awarded a judgment against DuPont for any damages that Philotechnics incurs as a result of PFNW's claims asserted against it in this cause, including expenses and attorneys' fees, under theories of express and implied indemnity;

3.     That Philotechnics be awarded a judgment against DuPont under theory of breach of contract for an amount to be determined at the hearing and sufficient to compensate Philotechnics for its damages;

4.     That this Court enter a declaratory judgment regarding the disposition of the DuPont waste;

5.     That Philotechnics be awarded discretionary costs and prejudgment interest; and

6.     That Philotechnics be awarded such other, further, and general relief to which it may be entitled.

> By: ___/s/ Jack M. Tallent II_____
> Jack M. Tallent, II (#004262)
> Kevin C. Stevens (#023035)
> Kennerly, Montgomery & Finley, P.C.
> 550 Main Street, Fourth Floor
> Bank of America Center
> Knoxville, TN 37902
> (865) 546-7311
>
> Thomas G. Cardelli (pro hac vice)
> Anthony F. Caffrey III (pro hac vice)
> Cardelli, Lanfear & Buikema, P.C.
> Grand Rapids, MI 49503
> (616) 285-3800
>
> Co-Counsel for Defendant Philotechnics, Ltd.

10

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2012, a copy of the foregoing Third-Party Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicted on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

**KENNERLY, MONTGOMERY, & FINLEY, P.C.**

By: ___/s/ Jack M. Tallent II_____